UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Marie J. Torres,

                              Plaintiff,

        v.

Carolyn W. Colvin, Acting Commissioner
of Social Security,

                              Defendant.

**Decision and Order**

1:16-CV-00625-HBS

(Consent)

## I.      Introduction

This action is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final

determination of defendant, Commissioner of Social Security, that plaintiff is not disabled and,

therefore, is not entitled to disability insurance benefits ("DIB") and/or Supplemental Security

Income Benefits ("SSI"). Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the

parties filed cross-motions for judgment on the pleadings. Dkt. Nos. 8, 11. For the reasons set

forth in this opinion, defendant's motion is DENIED and plaintiff's motion is GRANTED[1] in

part.

## II.     Background

### A.      Procedural Background

Plaintiff Marie Torres' action comes before this Court after extensive administrative

proceedings. She initially filed a Title II claim for DIB with the Social Security Administration

("SSA") on February 20, 2007, alleging a period of disability beginning January 13, 2004. Tr.

140. On September 18, 2007, this claim was denied. *Id*. Plaintiff subsequently filed a request for

---

[1]   The parties consented to Rule 73 jurisdiction on June 15, 2018.  Dkt. No. 13.

a hearing with an Administrative Law Judge ("ALJ"); this hearing was held on June 10, 2009 with ALJ Robert Harvey. Tr. 106–35. After the ALJ issued an unfavorable decision, plaintiff requested review from the Appeals Council. The Appeals Council remanded the case to the ALJ for further considerations. Tr. 203–05. After ALJ Harvey conducted another hearing, he issued another unfavorable decision on June 16, 2011. Tr. 151–59. Plaintiff once again requested review from the Appeals Council, and the Appeals Council remanded the case for further considerations. Tr. 167–69. Plaintiff then sat for a third hearing with a different ALJ, David Lewandowski, on January 6, 2014. Tr. 58–87. On December 15, 2014, the ALJ issued a partially favorable decision. Tr. 28–48. The Appeals Council denied review of this decision on June 3, 2016.

After nearly a decade of proceedings, plaintiff exhausted the administrative appeals process and filed a complaint with this Court on August 2, 2016. Dkt. No. 1. She alleges that the ALJ's December 15, 2014 decision of mere partial favorability was not supported by substantial evidence, warranting judgment in her favor or, alternatively, remand for further administrative proceedings. Dkt. No. 1 at 2.

### B.    Factual Background

Plaintiff was born March 17, 1973. Tr. 136. She testified to completing one-and-one-half years of college, majoring in business administration. Tr. 61. She had previous work experience as a bank teller and a bookkeeper. Tr. 62. She also reported self-employment as a property owner, but testified that she no longer had duties with respect to managing the property. *Id*. Plaintiff's medical impairments resulted from a motor vehicle accident that occurred in 2004, which she alleges have precluded her ability to work. Tr. 66. Ultimately, the ALJ concluded that

plaintiff's severe impairments included "lumbar and cervical discogenic disc disease with radiculopathy and headaches." Tr. 32.

### C. Relevant Medical Evidence

After her involvement in a motor vehicle accident on January 12, 2004, plaintiff suffered from lumbar and cervical spine impairments with associated pain. Tr. 523–524.

On May 23, 2005, an MRI scan of plaintiff's lumbar spine revealed the following impressions: right paracentral L5-S1 disc herniation minimally impinging on the anterior aspect of the thecal sac; and L4-5, L3-4, and L2-3 annular tears and associated L2-3 ventral disc herniation and L4-5 intra-annular protrusion without evidence of frank extrusion and no other sites of cervical disc herniation into the anterior epidural space. Tr. 734.

Plaintiff treated with Dr. William Capicotto from January 19, 2004–September 21, 2006. Tr. 518–56, 844–62. Dr. Capicotto assessed that plaintiff had decreased range of motion in the cervical and lumbar spine, as well as spinal tenderness. Tr. 523, 526, 529. On September 21, 2006, Dr. Capicotto opined that plaintiff was totally disabled. Tr. 846.

The record contains progress notes from Chiropractor Scott Croce ("Dr. Croce") from March 12, 2004–December 30, 2013. Tr. 557–766, 945–1029, 1034–51. The most recent full physical examination from Dr. Croce is dated November 2, 2012. Tr. 1044. On November 9, 2012, Dr. Croce issued a progress report detailing the November 2 appointment. Tr. 1067–68. He noted restrictions in spinal range of motion, pain, weakened motor strength, and the continued presence of significant symptoms. *Id*.

On November 20, 2012, an MRI scan of plaintiff's lumbar spine revealed the following impression: mild L4-5 thecal sac tapering from encroachment by a minimal disc bulge and facet/ligamentum flavum prominence. Tr. 1033.

On September 17, 2013, plaintiff visited WNY Rheumatology for a rheumatological consultation. Tr. 1055. She was examined by Nurse Practitioner Cloutier ("NP Cloutier"). Tr. 1055–57. NP Cloutier assessed that plaintiff's most likely diagnosis was fibromyalgia, and that plaintiff lacked signs of synovitis or untreated inflammatory arthritis. Tr. 1057, 1059–60, 1090–91.

On November 8, 2013, plaintiff visited Dr. Ross Sherban's office for an examination. Tr. 1106–10. Upon physical examination, Dr. Sherban found that plaintiff had an antalgic gait pattern, moderate to severe tenderness in the lower lumbar and cervical regions, and decreased range of motion secondary to pain. Tr. 1107–08. Dr. Sherban noted that conservative treatment measures such as chiropractic care and pain management medication provided "minimal relief" for plaintiff. Tr. 1106. He ultimately concluded that plaintiff "failed conservative treatment" and that she "continues to be symptomatic." Tr. 1109.

### D.    The ALJ's Decision

On December 15, 2014, the ALJ issued a partially favorable decision regarding plaintiff's claim for DIB. Tr. 28–48. He concluded that plaintiff was under a disability, as defined by the Social Security Act, from January 13, 2004–November 19, 2012. Tr. 42. However, he found that as of November 20, 2012, medical improvement had occurred. Tr. 43. To support his finding of medical improvement, the ALJ referenced "MRI evidence dated November 20, 2012" and "the findings of Dr. Sherban, Dr. Chadha, Nurse Practitioner Coutier [sic] and Chiropractor Croce." Tr. 43. In light of this medical improvement, the ALJ found that plaintiff was not disabled after November 20, 2012. Tr. 47–48.

## III.    Discussion

The sole issue to be reviewed by this Court is whether the ALJ's decision that plaintiff was not under a disability after November 19, 2012 is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)); *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) ("[substantial evidence] is less than a preponderance of the evidence but more than a mere scintilla"). The ALJ's disability determination must be upheld by this Court even if "substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### A.    Medical Improvement Standard

A recipient of DIB or SSI must be evaluated "from time to time to determine if [she is] still eligible for disability cash benefits." 20 C.F.R. § 404.1589. To determine whether a claimant's period of disability has ended, the Commissioner must engage in an eight-step analysis:

> (1) If the claimant is engaging in substantial gainful activity ("SGA"), she is no longer disabled.
>
> (2) If the claimant is not engaging in SGA and has an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of 20 C.F.R. § 404, subpart P, disability will continue.
>
> (3) If the claimant does not have such a combination of impairments, the Commissioner must determine "if there has been medical improvement as shown by a decrease in

medical severity . . . . If there has been no decrease in medical severity, there has been no medical improvement."

(4) If there is medical improvement, the Commissioner must determine if that medical improvement is related to the ability to work.

(5) If there is no medical improvement, or the established medical improvement is unrelated to the ability to work, then disability will continue. If an exception applies, or there is medical improvement related the ability to do work, the Commissioner goes to step six.

(6) The Commissioner must determine whether the claimant's impairments in combination are severe. If they are not, the claimant is no longer disabled.

(7) If the claimant has a severe impairment, the Commissioner must assess the claimant's residual functional capacity and then determine if they are able to do work they have done in the past. If the claimant can do work they have done in the past, the claimant is no longer disabled.

(8) If the claimant cannot do any work they have done in the past, the Commissioner must determine whether there is any other work the claimant can do given the claimant's RFC, age, education, and work experience. If no such work exists, the claimant's disability will continue. If such work does exist, the claimant's disability will end.

20 C.F.R. § 404.1594(f). Districts within the Second Circuit and other Circuit Courts have held that this eight-step analysis outlined in §404.1594 should be applied in cases involving a closed period of disability. *Shepherd v. Apfel*, 184 F.3d 1196, 1200 (10th Cir. 1999) ("applying the medical improvement standard to cases involving a closed period of disability is consistent with the language and legislative purpose in the Reform Act"); *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002) ("we follow the Tenth, Seventh, Eleventh, and Third Circuits in holding that the medical improvement standard applies to the cessation date in closed period cases"); *Chavis v. Astrue*, No. 5:07-CV-0018 LEK VEB, 2010 WL 624039, at *5 (N.D.N.Y. Feb. 18, 2010) ("[t]his Court will follow the overwhelming majoring of courts finding that the medical improvement standard applies to closed period disability cases").

Step two of the eight-step analysis requires a finding of medical improvement. 20 C.F.R. § 404.1594(f). Under the 1984 Amendments to the Social Security Act, a determination that a claimant is no longer disabled may only be reached if supported by "substantial evidence which demonstrates that there has been any medical improvement in the individual's impairment or combination of impairments." 42 U.S.C. § 423(f). Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A determination that there has been a decrease in severity "must be based on improvement in the symptoms, signs, and/or laboratory findings associated with your impairment(s)." *Id.* In order to determine whether medical improvement has occurred, the Social Security Administration must "compare the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled to the medical severity of that impairment(s) at that time." 20 C.F.R. § 404.1594(b)(7); *Veino v. Barnhart*, 312 F.3d 578, 587 (2d Cir. 2003).

## B.      Plaintiff's Arguments

Plaintiff asserts that the ALJ's finding that "[m]edical improvement occurred as of November 20, 2012", Tr. 43, is not supported by substantial evidence. Dkt. No. 8-1 at 23. She claims that the ALJ mistakenly relied on his lay interpretation of MRI evidence, and that he presented contradictory evidence in the record to support his finding. *Id.* at 26. Because plaintiff's benefits cannot be terminated after November 19, 2012 unless there is "substantial evidence which demonstrates that there has been any medical improvement in the individual's impairment or combination of impairments", 42 U.S.C. § 423(f), the case must be remanded for further administrative proceedings if plaintiff's argument is meritorious.

The Social Security regulations require that the ALJ "compare the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision . . . to the medical severity of that impairment(s) at that time." 20 C.F.R. § 404.1594(b)(7). Medical improvement is a threshold issue in the eight-step process for deciding whether a recipient's benefits should be terminated, and must be considered separately from and prior to a determination of functional capacity. 20 C.F.R. § 404.1594(f)(5) ("[i]f we found at step (3) that there has been no medical improvement . . . your disability will be found to continue"); *Supplemental Security Income; Disability and Blindness Determinations*, 50 Fed. Reg. 50121 ("[o]ur intention had always been that a decrease in severity had to precede any determination that there had been an increase in functional capacity"). An inadequate comparison of the evidence between a claimant's favorable and unfavorable periods may be grounds for remand. *De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 937 (2d Cir. 1984) ("this comparison of evidence was grossly inadequate and does not provide substantial support for finding the requisite medical improvement").

In *Carbone v. Astrue*, the Court found that substantial evidence did not support an ALJ's finding of medical improvement. The ALJ gave the following justifications for finding medical improvement:

> The claimant's seizures were less frequent. She was seeing her physicians far less often. She became much more active on a daily basis. Whereas in March 2004 the claimant's seizure disorder was characterized by disorientation and confusion, EEG testing performed on April 29, 2004 produced normal results. Subsequent EEG monitoring raised doubts as to the existence of a seizure disorder. Results obtained on neurological evaluation included normal sensation and coordination, normal gait and station, and full motor power. Dr. Mehra found in November 2005 that the claimant had no functional restrictions. In 2006, Dr. Schlesinger stated that the claimant's seizure disorder was being well controlled through the use of medication.

*Carbone v. Astrue*, No. 08-CV-2376 NGG, 2010 WL 3398960, at *9 (E.D.N.Y. Aug. 26, 2010).

The Court ultimately concluded that substantial evidence did not support the ALJ's findings of medical improvement. *Id.* at *14–15. For example, although the ALJ stated that "the claimant's seizures were less frequent," the court found that the record contained inconsistent evidence concerning the number of seizures the claimant experienced. *Id.* at *14. The claimant's physician had testified that it was "difficult to quantify" the claimant's seizures. *Id.* The court also observed that the ALJ did not explain why the claimant's normal EEG tests supported a finding of disability before May 2004, but not after. *Id.* at *15. The court remanded the case to determine whether the claimant experienced medical improvement. *Id.* at *18.

In this case, the entirety of the ALJ's discussion of plaintiff's medical improvement is contained in one paragraph at his Finding No. 14:

> MRI evidence dated November 20, 2012, established that the claimant sustained medical improvement related to the ability to work [citation omitted]. In addition, the findings of Dr. Sherban, Dr. Chadha, Nurse Practitioner Coutier [sic] and Chiropractor Croce substantiated that the claimant sustained medical improvement related to the ability to work as set forth at Finding No. 16 when considering her lumbar and cervical spine discogenic disease disc disease and radiculopathy and in accordance with the analysis as set forth at Finding No. 16.

Tr. 43. Based solely on this analysis, it is unclear how the ALJ "compare[d] the current medical severity . . . to the medical severity . . . at that time." 20 C.F.R. § 404.1594(b)(7). Like the ALJ in *Carbone*, the ALJ in this case gave conclusory statements that, for the reasons set forth, are not clearly supported by the evidence the ALJ referenced. *Carbone*, 2010 WL 3398960, at *9.

The only medical evidence of record specifically referenced in the ALJ's medical improvement finding is an MRI scan dated November 20, 2012. Tr. 43, 1033. This MRI, dated the first day that the ALJ found plaintiff no longer disabled, is not compared against any evidence or findings from the time of plaintiff's period of disability of January 13, 2004–

November 19, 2012. Tr. 43. Considering that there is no medical opinion pertaining to this MRI in the record, and the MRI is seemingly not referenced in any of plaintiff's physicians' treatment notes, it is unclear how the ALJ determined that the MRI "established that the claimant sustained medical improvement." Defendant, in her brief, engages in a comparison of the November 20 MRI with an earlier MRI study from 2005. Dkt. No. 11-1 at 18; Tr. 734, *supra* at 3. Such a comparison cannot be considered by this Court for two reasons. First, this comparison was not made by the ALJ. It is a well-established principle of administrative law that a District Court may only uphold an agency action "on the grounds that the agency invoked when it took the action." *Michigan v. E.P.A.*, 135 S. Ct. 2699, 2710 (2015). Second, defendant's conclusion that the two studies show a "decrease in severity" in plaintiff's impairments, 20 C.F.R. § 404.1594(b)(1), being uncorroborated by a physician's opinion or assessment, must be based on defendant's lay interpretation of the MRI evidence. In the absence of a medical opinion, the ALJ "should not have engaged in his own evaluations of the medical findings." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *Filocomo v. Chater*, 944 F. Supp. 165 (E.D.N.Y. 1996)).

Furthermore, it is unclear how the objective or subjective findings of Dr. Sherban, Dr. Chadha, NP Cloutier, or Dr. Croce "substantiated that the claimant sustained medical improvement" without any further explanation. Several of these medical professionals — Dr. Sherban, Dr. Chadha, and NP Cloutier — were not treating plaintiff during her period of disability before November 20, 2012. Similarly, there are no physical examinations or full assessments from Dr. Croce after November 9, 2012.  Thus, any decrease in severity of the plaintiff's impairments could not possibly be based on a comparison of any single medical source's findings before and after the date plaintiff was determined to be no longer disabled.

Dr. Chadha and NP Cloutier work in a rheumatology office, and first saw plaintiff on September 17, 2013, for a rheumatological consultation[2]. Tr. 1055–57. In this visit and subsequent visits, NP Cloutier made findings regarding "other and unspecified nonspecific immunological findings", "screening for rheumatoid arthritis", "pain in joint involving hand", "pain in joint involving ankle and foot", and "myalgia and myositis unspecified." Tr. 1057, 1059–60. She assessed that plaintiff's most likely diagnosis was "myofascial pain syndrome/fibromyalgia" and that there were no signs of synovitis or untreated inflammatory arthritis. Tr. 1091. These findings may be relevant to plaintiff's current condition regarding arthritis, fibromyalgia, and other rheumatological conditions; however, they are not relevant in determining medical improvement. The regulations call for a comparison of severity regarding "impairment(s) which [were] present at the time of the most recent favorable medical decision." 20 C.F.R. § 404.1594(b)(7). These rheumatological conditions were not deemed present in the plaintiff's closed period of disability, Tr. 32–33, and thus have no bearing on medical improvement. Therefore, it is unclear as to how the findings of NP Cloutier and Dr. Chadha substantiate a finding of medical improvement regarding plaintiff's impairments.

Similarly, Dr. Croce's findings do not present substantial evidence of medical improvement. Dr. Croce's most recent full examination of plaintiff was November 2, 2012, less than a month prior to the date she was determined to be no longer disabled. Tr. 1067–68. The ALJ cited this examination, and other findings of Dr. Croce, when calculating plaintiff's residual functional capacity from January 13, 2004–November 19, 2012. Tr. 39. He assigned "significant weight" to the findings of Dr. Croce. Tr. 40. Ultimately, the ALJ found that the plaintiff was disabled during the period that he relied on Dr. Croce's findings. Tr. 42. It does not logically

---

[2] Nurse Practitioner Cloutier is the medical source that examines plaintiff, Dr. Chadha reviews NP Cloutier's reports and signs them. *See* Tr. 1057, 1060.

follow that the same findings that the ALJ used to determine plaintiff had a work precluding residual functional capacity on November 2 would also substantiate a finding of medical improvement on November 20. This conclusion follows the reasoning of the Court in *Carbone*, where the Court found it inconsistent for an ALJ to use normal EEG reports to justify medical improvement while simultaneously giving no weight to those reports in finding the claimant disabled. *Carbone*, 2010 WL 3398960, at *15.

Finally, Dr. Sherban's singular assessment does not provide substantial evidence for the ALJ's finding of medical improvement. Dr. Sherban's findings — antalgic gait, moderate to severe tenderness over the lower cervical and lower lumbar region, decreased range of motion in the lumbar and cervical spine secondary to pain — are consistent with findings of plaintiff's other physicians during her period of disability before November 20, 2012. *See* Tr. 523, 526, 529 (Dr. Capicotto finds decreased lumbar and cervical spine range of motion and spinal tenderness); Tr. 628, 634, 639, 644 (Chiropractor Croce finds decreased range of motion with pain). In fact, Dr. Sherban ultimately assessed that plaintiff "has failed conservative treatment," Tr. 1109, which suggests her condition may still be severe. *Cosby v. Berryhill*, No. 16 C 11504, 2017 WL 4237048, at *3 (N.D. Ill. Sept. 25, 2017) (holding that an ALJ erred in ignoring evidence that claimant failed treatment with prescription pain medications). Therefore, it is not clear how Dr. Sherban's assessment substantiates a finding of medical improvement.

In conclusion, the ALJ's determination that MRI evidence, and the findings of Dr. Sherban, Dr. Chadha, NP Cloutier, and Dr. Croce substantiated a finding of medical improvement beginning November 20, 2012, is procedurally defective. Thus, the case must be remanded for further administrative proceedings to determine whether plaintiff sustained medical improvement after November 20, 2012. This Court takes no position as to whether plaintiff

sustained medical improvement. Furthermore, because the issue of medical improvement warrants remand, this Court declines to address the second issue raised by plaintiff regarding credibility analysis.

## IV. Conclusion

For all the foregoing reasons, the Court grants plaintiff's motion, Dkt. No. 8, in part to vacate the Commissioner's final determination and to remand for further administrative proceedings. The Court denies plaintiff's motion, without prejudice, to the extent that it seeks any other relief. The Court also denies the Commissioner's cross-motion. Dkt. No. 11.

The Clerk of the Court shall close this case.


SO ORDERED.

_/s/ Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: July 5, 2018